DAVIS, Judge.
I.M. challenges the order of the trial court finding him guilty of the delinquent acts of obstructing or opposing an officer without violence, trespass, and burglary of an unoccupied dwelling. In that order, the trial court also withheld adjudication and placed I.M. on probation until his nineteenth birthday. The burglary allegation stems from a separate incident, and we affirm the disposition order as to that allegation without further comment. However, we reverse the disposition order as to the trespass and obstruction allegations.
Those allegations stem from an incident at a public library during which an off-duty sheriffs deputy was outside the library questioning a group of teenagers about horseplay within the library. I.M., who was not one of the teenagers in question, began to interfere by yelling profanity and racial slurs at the deputy. I.M. told the original group of teens that they did not *920 have to listen to the deputy. The deputy instructed I.M. to leave, but I.M. did not and instead continued to yell profanity. The deputy testified that he had to interrupt his original investigation three times to admonish I.M. The deputy ultimately approached I.M. in order to arrest him, but I.M. jumped onto his bicycle and tried to flee.
On appeal, I.M. argues that the trial court erred in denying his motion for dismissal as to these two allegations because (1) the State’s evidence that I.M. merely yelled at the deputy is not enough to constitute obstruction and (2) the State failed to establish a prima facie case for trespass because it did not present evidence that the deputy had been authorized by the property owner to issue a trespass warning.
As to the obstruction allegation, this court has noted that
[i]f a police officer is not engaged in executing process on a person, is not legally detaining that person, or has not asked the person for assistance with an ongoing emergency that presents a serious threat of imminent harm to person or property, the person’s words alone can rarely, if ever, rise to the level of an obstruction.
D.G. v. State, 661 So.2d 75, 76 (Fla. 2d DCA 1995). “Thus, obstructive conduct rather than offensive words are normally required to support a conviction [for obstructing].” Id. Here, the deputy was merely talking to a group of teens about acting up in the library when I.M. started shouting at him. We therefore agree with I.M. that his words alone could not be the basis for the obstruction charge.
However, if the deputy was acting in his lawful duty when he attempted to arrest I.M. for trespass, then I.M.’s act of getting on his bicycle and fleeing would constitute obstructing. See § 843.02, Fla. Stat. (2009) (“Whoever shall resist, obstruct, or oppose any officer ... in the lawful execution of any legal duty, without offering or doing violence to the person of the officer, shall be guilty of a misdemean- or... .”). Pursuant to the trespass statute, section 810.09(2)(b), Florida Statutes (2009), a trespass is committed “[i]f the offender defies an order to leave, personally communicated to the offender by the owner of the premises or by an authorized person.” (Emphasis added.) As such, as an element of trespass, the State here had to show that the deputy was authorized to issue the trespass warning. Absent this showing, the deputy was not in the “lawful execution of [a] legal duty” and there was no basis for the obstruction charge.
“‘Common understanding’ dictates that the phrase ‘other authorized person’ is to be read in light of the preceding phrase ‘owner of the premises.’ ” State v. Dye, 346 So.2d 538, 541-42 (Fla.1977). Furthermore, “[o]n public premises, authorized personnel include[ ] those persons who have been given either express or implied authority from the chief executive.” Id. at 542 (concluding that with regard to a public school building, the school board was the chief executive). Here, on the morning of trial, the trial court granted defense counsel’s motion in limine to exclude any hearsay testimony by the off-duty deputy that the head librarian had given him authority to issue trespass warnings. The closest the State came to establishing such authority was asking the deputy, “As a Hillsborough County Sheriffs Deputy do you have the authority to issue trespass warnings?” The deputy responded, “We do.” This, however, is insufficient to establish that the deputy had “been given either express or implied authority from the chief executive” of the library. See Dye, 346 So.2d at 541-42; cf. Fox v. State, 580 So.2d 313, 314 *921 (Fla. 3d DCA 1991) (finding sufficient evidence of authorization where, despite a lack of explicit testimony that chief executive gave police officer authority to issue trespass warnings, “[a]t trial both the [public housing] project manager and the arresting officer testified about the relationship between the Modello [Housing] Project and the police department with respect to efforts to control crime and the sale of drugs” and concluding that “[t]he project manager certainly has the authority to enlist the assistance of the police” (emphasis added)).
Here, the chief librarian did not testify, and the State was unable to establish the off-duty deputy’s authority. As such, the State failed to prove all the elements of trespass, and we therefore reverse the trial court’s disposition order as to that allegation. Furthermore, because the deputy was not executing a legal duty at the time I.M. attempted to ride away on his bike, we also reverse the disposition order as to the obstructing charge.
We note that the State cites M.M. v. State, 674 So.2d 883 (Fla. 2d DCA 1996), for the proposition that the deputy had the right to ask I.M. to leave an area that is otherwise open to the public. However, even if the deputy did possess such a right, I.M.’s failure to comply with the request would not be a valid basis for an arrest for trespass after warning. Simply asking a member of the public to leave the area does not amount to issuing a trespass warning.
Affirmed in part and reversed in part.
KELLY and WALLACE, JJ., Concur.